UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MANUEL BURGOS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>ROBERT LONG, et al.,<br><br>　　　　　　Defendants. | No. 2:11-cv-01906-JAM-JFM<br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the Eighth Amendment by improperly influencing medical staff at California State Prison, Solano (CSP-Solano) to rescind plaintiff's "single cell" medical status, thereby deliberately interfering with his medical care. This matter is before the court on defendants' motion for summary judgment. ECF No. 81. Plaintiff opposes the motion, ECF No. 85, and his First Amended Complaint (ECF No. 36) is verified under penalty of perjury and therefore may constitute an opposing affidavit for Rule 56 purposes. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir.1995).[1] Also before the court are plaintiff's Motion for Temporary Restraining Order filed on April 12, 2013 (ECF No. 67);

---

[1] Even though plaintiff's complaint is verified, it may function as a supporting affidavit for purposes of summary judgment only to the extent that it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." Schroeder, 55 F.3d at 460 (citations omitted).

1  Motion for Temporary Restraining Order and Preliminary Injunction filed on September 12, 2013
2  (ECF No. 89); Motion for Sanctions and Protective Order filed on September 26, 2013 (ECF No.
3  93); and Motion to Supplement Newly Discovered Evidence filed October 18, 2013 (ECF No.
4  97).

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically store information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . ., is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

2

1  party to establish that a genuine issue as to any material fact actually does exist.  See <u>Matsushita</u>
2  <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the
3  existence of this factual dispute, the opposing party may not rely upon the allegations or denials
4  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or
5  admissible discovery material, in support of its contention that the dispute exists.  <u>See</u> Fed. R.
6  Civ. P. 56(c)(1); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the
7  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
8  governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv.,</u>
9  <u>Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
10  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
11  party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

12  In the endeavor to establish the existence of a factual dispute, the opposing party need not
13  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
14  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
15  trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
16  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
17  <u>Matsushita</u>, 475 U.S. at 587 (citations omitted).

18  "In evaluating the evidence to determine whether there is a genuine issue of fact," the
19  court draws "all reasonable inferences supported by the evidence in favor of the non-moving
20  party."  <u>Walls v. Central Costa County Transit Authority</u>, 653 F.3d 963, 966 (9th Cir. 2011).  It is
21  the opposing party's obligation to produce a factual predicate from which the inference may be
22  drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
23  <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
24  party "must do more than simply show that there is some metaphysical doubt as to the material
25  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the
26  nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation
27  omitted).

28  In their June 28, 2013 motion for summary judgment, defendants advised plaintiff of the

requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); see also Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## ANALYSIS

### I. FACTS

The following facts are undisputed unless otherwise noted.[2] At all times relevant to this action plaintiff was a state prisoner confined at CSP-Solano and defendants were employed by the California Department of Corrections and Rehabilitation (CDCR) working at CSP-Solano. Plaintiff suffers from a number of medical conditions including permanent nerve damage to his head, neck, back right leg and right foot, seizures, Barrett's Disease, multiple respiratory conditions, nasal polyps, and a deviated septum. He uses a CPAP breathing machine. Deposition of Richard Manuel Burgos at 17:1-23:3 (hereinafter "Burgos Deposition"); ECF No. 36 at 5-6.

On May 31, 2010, plaintiff submitted a Health Care Services Request From to Dr. Win, a doctor on the medical staff at CSP-Solano, requesting that he be placed in a single-person cell by himself because his medical conditions were being aggravated by exposure to the hygiene habits of his cellmates. Decl. of Plaintiff, Richard Manuel Burgos, in Support of Motion in Opposition to Defendants' Motion for Summary Judgment (ECF No. 85, at 64-131) at ¶100 (hereinafter "Decl. of Burgos"); Burgos Deposition at 15:19-16:21. On June 2, 2010, Dr. Win called plaintiff into his office, reviewed plaintiff's health record and medical request, and stated that he would notify his supervisor, Dr. McAlpine, of plaintiff's situation and for review of plaintiff's request. Decl. of Burgos at ¶101. On June 16, 2010, Dr. McAlpine called plaintiff to the "Medical High Risk Clinic," where Dr. McAlpine reviewed plaintiff's medical records and request, conducted a

---

[2] In his opposition to the motion, plaintiff states that he denies a large majority of defendants' Statement of Undisputed Facts. However, apart from a few instances, plaintiff's denials do not directly address or place into contention defendants' version of the facts. In fact, plaintiff's declaration accompanying his opposition to summary judgment asserts the existence of many of the same facts he purports to deny. Accordingly the court notes where plaintiff raises genuine disputes of fact, but otherwise finds the facts to be undisputed where they are proffered by both parties regardless of plaintiff's denials.

1  physical examination of plaintiff, and told plaintiff that he must wait for a decision on his request
2  for single cell status.  Id. at ¶102.

3  On August 3, 2010, Dr. Win issued to plaintiff a Comprehensive Accommodation Chrono
4  (chrono) recommending that plaintiff receive ground floor, lower bunk, and single cell status for
5  one year.  Decl. of McApline (ECF No. 81-1) at ¶3.  Generally, single cell status is usually
6  recommended only on a temporary basis and is subject to periodic review.  Decl. of Long at ¶5.
7  Defendant Long, a correctional counselor at SCP-Solano assigned to plaintiff, states that he was
8  informed in August that Dr. Win had issued the chrono to plaintiff and that he scheduled plaintiff
9  for a Unit Classification Committee (UCC) pursuant to CDCR regulations to review the chrono.
10 Decl. of Long at ¶¶3-4.  Plaintiff contests this statement, claiming that Long and the other
11 defendants refused to provide plaintiff with a UCC meeting to review his single cell status.  See
12 Decl. of Burgos at ¶127-176.

13 On August 24, 2010, Defendant Molles sent an email to Dr. McAlpine, Dr. Traquina, who
14 was the Chief Medical Officer (CMO) at CSP-Solano, Lauri Austin, who was the head of Health
15 Care Services, and Associate Warden Anthony Jones requesting that the medical staff review the
16 chrono issued by Dr. Win because the housing restrictions listed in the chrono, which included a
17 grant of single cell status to plaintiff, appeared to be inconsistent with the fact that plaintiff was
18 not in the prison's Disability Placement Program.  Decl. of Molles at ¶4; Decl. of Traquina at ¶5;
19 ECF No. 81-1 at Exhibit J (email correspondence).  Dr. McAlpine replied to this email stating
20 that he would review plaintiff's chrono.  Decl. of Molles at ¶5; ECF No. 81-1 at Exhibit J.  On
21 August 27, 2010, Dr. McAlpine reviewed plaintiff's medical records; based on this review and a
22 previous in-person examination he had conducted on plaintiff, Dr. McAlpine determined that
23 plaintiff's single cell status was not medically necessary.  Decl. of McAlpine at ¶6-7.  Dr.
24 McAlpine states that he made this determination based on his independent medical judgment and
25 that he was not coerced by the prison's custody staff in deciding to rescind the chrono.  Id. at ¶11.
26 Dr. McAlpine then told Dr. Traquina that he believed that plaintiff's single cell status should be
27 rescinded and sent an email to Molles stating that he had had a chance to review plaintiff's chrono
28 and that certain items on it needed to be rescinded.  Id. at ¶7; Decl. of Traquina at ¶7; ECF No.

5

81-1 at Exhibit J.  Dr. McAlpine and Dr. Traquina spoke with Dr. Win about rescinding plaintiff's single cell status and Dr. Win stated that he did not have any objections regarding this course of action.  Decl. of McAlpine at ¶8.  On or around September 29, 2010, Dr. McAlpine and Dr. Win signed a new chrono for plaintiff, which allowed plaintiff to retain his ground floor and lower bunk housing status for one year, but removed his single cell status.  Id.; ECF No. 81-1 at Exhibit L (chrono dated 9/29/10).

On October 1, 2010, Dr. McAlpine sent an email to Dr. Traquina, Dr. Win, Molles, and Long stating that he had signed a new chrono that rescinded plaintiff's single cell status.  Decl. of McAlpine at ¶9; ECF No. 81-1 at Exhibit J.  On the same day, Dr. McAlpine and Long had been informed that plaintiff was continuing to use his August 3, 2010 chrono to convince prison staff that he was entitled to a single cell.  Decl. of McAlpine at ¶10; Decl. of Long at ¶9.  Long called plaintiff into his office to inform plaintiff that Dr. McAlpine had rescinded his single cell status and that he should not present staff with his rescinded chrono.  Decl. of Long at ¶¶8, 10.  To the contrary, plaintiff claims that he never attempted to offer his rescinded chrono to staff members and that Long never told him not to use his rescinded chrono.  ECF No. 85 at 22-23.  On October 7, 2013, Dr. McAlpine signed a new chrono explicitly stating that plaintiff's single cell status had been rescinded and that the new chrono superseded all other chronos.  Decl. of McAlpine at ¶10; ECF No. 81-1 at Exhibit M (chrono dated 10/7/10).

Defendant Valencia is a Correctional Counselor at CSP-Solano and was assigned to plaintiff in 2010.  Decl. of Valencia at ¶¶2-3.  As a Correctional Counselor, Valencia participates in the UCC.  Id. at ¶2.  In August of 2010 Valencia was informed that plaintiff had been issued a single cell chrono by Dr. Win.  Id. at ¶4.  He was subsequently informed that medical staff had rescinded plaintiff's chrono.  Id. at ¶8.  Valencia did not have the authority to unilaterally provide plaintiff a single cell chrono before plaintiff went to the UCC and after plaintiff's chrono was rescinded.  Id. at ¶¶ 6, 9.  Valencia states that he never asked or coerced any member of the medical staff to rescind plaintiff's single cell chrono.  Id. at ¶10.

Defendant Swarthout is the Warden at CSP-Solano.  Decl. of Swarthout at ¶2.  In this position, Swarthout is not personally involved in issuing or implementing single cell chronos

1  based on medical needs. Id. at ¶3. To the extent that a question regarding plaintiff's need for a
2  single cell chrono did arise, Swarthout would have deferred the question to the prison's medical
3  staff. Id. at ¶6. Swarthout states that he never asked or coerced any member of the medical staff
4  to rescind plaintiff's single cell chrono. Id. at ¶7.

5  Defendant Stauss is a Correctional Captain at CSP-Solano. Decl. of Stauss at ¶2. Stauss
6  states that he was not involved in the decision to rescind plaintiff's single cell chrono and that he
7  did not have the authority to implement a single cell chrono. Id.at ¶3. To the extent that a
8  question regarding plaintiff's need for a single cell chrono did arise, Stauss would have deferred
9  the question to the prison's medical staff, plaintiff's correctional counselor, or the UCC. Id. at ¶5.
10 Stauss states that he never asked or coerced any member of the medical staff to rescind plaintiff's
11 single cell chrono. Id. at ¶6.

12 Defendant Cappel is an Associate Warden at CSP-Colano. Decl of Cappel at ¶2. In this
13 position, Cappel is not personally involved in issuing or implementing single cell chronos based
14 on medical needs. Id. at ¶3. To the extent that a question regarding plaintiff's need for a single
15 cell chrono did arise, Cappel would have deferred the question to the prison's medical staff. Id. at
16 ¶6. Cappel states that he never asked or coerced any member of the medical staff to rescind
17 plaintiff's single cell chrono. Id. at ¶7.

18     II.    <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

19 Defendants argue that summary judgment is proper with respect to plaintiff's Eighth
20 Amendment deliberate indifference claims on three grounds. First, defendants argue that plaintiff
21 proffers no evidence to support a finding that any of the six defendants acted with deliberate
22 indifference to plaintiff's alleged serious medical needs. ECF No. 81 at 13-19. Second,
23 defendants argue that they are all entitled to qualified immunity for the acts alleged by plaintiff
24 even if plaintiff could establish a violation of his constitutional rights. Id. at 19-22. Finally,
25 defendants contend that they are immune to suit in their official capacities for money damages
26 under the Eleventh Amendment. Id. at 22-23.

27 The Eighth Amendment prohibits state actors from acting with deliberate indifference to
28 an inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825 (1994). A claim based on

deliberate indifference to health or safety has two elements.  First, an inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." Id. at 834.  Second, the inmate must show that defendants acted with "deliberate indifference" to that risk.  Id.  Deliberate indifference is shown by proof that a prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that he drew the inference.  Id. at 837.

In the context of medical treatment, a cause of action for deliberate indifference arises upon a showing that two elements have been met.  First, "the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury' or the 'unnecessary and wanton infliction of pain.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  Next, the plaintiff must show that the defendant prison official acted with "deliberate indifference," which may be shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992)).  "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . .'" Id. (quoting McGuckin, 974 F.2d at 1059 (in turn quoting Hutchinson v. United States, 838 F.2d 390, 392 (9th Cir. 1988))); see also Estelle, 439 U.S. at 104 (holding that prison officials act with deliberate indifference when they "intentionally deny[] or delay[] access to medical care or intentionally interfer[e] with the treatment once prescribed.").

Plaintiff claims that defendants all acted with deliberate indifference to his serious medical needs by failing to carry out and interfering with the medical staff's issuance of a medical chrono giving him single cell status.  ECF No. 36 at 9-13.  However, even assuming arguendo that plaintiff had a serious medical need requiring single-cell status, there is no evidence before the court that any of the defendants acted with deliberate indifference to that need in relation to the rescission of the chrono.  The evidence regarding each defendant is evaluated below.

////

////

A. Long

Relevant to the current action,[3] plaintiff claims that Long wrongfully interfered with his single cell status by contacting Dr. Traquina while Dr. Traquina was on vacation and coercing Dr. Traquina to rescind plaintiff's single cell status. First Amended Complaint (ECF No. 36) at ¶62. Plaintiff further alleges that Dr. Traquina subsequently contacted Dr. McAlpine, telling Dr. McAlpine to rescind plaintiff's single cell status. Id. However, the court finds these allegations to be unsubstantiated by any evidence in the record.

During his deposition, plaintiff stated he had approached Sargent Jiminez on October 2, 2010 and said to Jimenez: "I can't believe Long called the CMO [Dr. Traquina] at home on vacation to have my single cell status taken away." Burgos Deposition at 44:10-14. Jimenez replied by stating, "I took your chronos to Cappel and Long, and Long said he was going to tell you your single cell status is denied." Id. at 44:14-16. Plaintiff claimed that Jimenez's reply implies that Long had called Dr. Traquina while Dr. Traquina was on vacation, based on the timing of the rescission relative to Jimenez's reply and Long's alleged desire to deny plaintiff single cell status. Id. at 46:5-19. However, plaintiff has admitted that he did not know the means used by Long to contact Dr. Traquina, nor what was said during the alleged conversation. Id. at 50:1-20. Plaintiff also admitted that he has no direct proof that this alleged contact ever took place. Id. at 60:5-14. The court finds that the record is insufficient to support an inference that Long "denied, delayed or intentionally interfered with the medical staff's decision regarding his single cell status." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Barren v. Harrington, 152 F.3d 1193, 1194-95 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); Liberty Leasing Co. v. Hillsum Sales Corp., 380 F.2d 1013, 1015 (5th Cir. 1967) (citing Fed. R. Civ. P. 56(e) and Robin Construction v. United States, 1965, 345 F.2d 610, 613-614 (3d

---

[3] In his declaration, plaintiff makes a number of assertions against Long regarding plaintiff's work assignment. See Burgos Decl. at ¶¶108-121. These allegations are irrelevant to the claim presented here, and involve a distinct claim presented in another currently-pending case, No. 2:10-cv-3274 TLN EFB, in which plaintiff alleges that Long acted with deliberate indifference to plaintiff's serious medical needs in connection with plaintiff's work assignment.

1 Cir. 1965)) ("[M]ere general allegations which do not reveal detailed and precise facts will not
2 prevent the award of summary judgment.").

3 Furthermore, the evidence shows that Dr. McAlpine independently reviewed plaintiff's
4 medical records and made a determination that plaintiff's medical conditions did not make single
5 cell status necessary.  Burgos Deposition at 55:19-56:8; Decl. of McAlpine at ¶6-7, 11.  After Dr.
6 McAlpine made this independent determination, he informed Dr. Traquina that he believed that
7 plaintiff's single cell chrono should be rescinded.  Decl. of Dr. McAlpine at ¶7; Decl. of Traquina
8 at ¶7.  No evidence indicates that Long attempted to coerce or even communicate to Dr.
9 McAlpine the suggestion that Dr. McAlpine should rescind plaintiff's single cell status.
10 Accordingly, even if Long had attempted to coerce Dr. Traquina, it would not have impacted the
11 rescission of plaintiff's single cell status because Dr. McAlpine was the one who made the
12 decision to rescind.  The evidence therefore fails to support a causal connection between Long's
13 alleged actions and Dr. McAlpine's decision to rescind plaintiff's single cell status.  See Taylor v.
14 List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing Fayle v. Stapley, 607 F.2d 858, 862 (9th
15 Cir.1979)) ("Liability under section 1983 arises only upon a showing of personal participation by
16 the defendant.").  Moreover, the evidence establishes that Long had no authority to reinstate
17 plaintiff's single cell status after it had been rescinded.  Long's actions after plaintiff's chrono
18 was rescinded cannot amount to deliberate indifference, because Long was not in a position to
19 provide plaintiff with the medical accommodations he claims he needed.

20 In sum, plaintiff fails to provide evidence sufficient to support a conclusion that Long
21 intentionally interfered with plaintiff's alleged medical need for single cell status or that Long's
22 actions had any causal connection to the rescission of plaintiff's single cell status.  Accordingly,
23 summary judgment should be granted in defendants' favor with respect to plaintiff's claim against
24 Long.

25     B.  Valencia

26 Plaintiff claims that Valencia "continuously failed to carry out and interfered with
27 [plaintiff's] Licensed Medical Doctor's prescribed treatment of single cell status."  First Amended
28 Complaint at ¶16.  Plaintiff states in his verified complaint that he had presented his single cell

1  status chronos to Valencia on August 20, 2010 and stated: "Robert Long was issued these chronos
2  by Senior Nurse Hicks on August 17, 2010. Can you please read Title 15 Section 3269(f) to
3  me?" Id. at ¶19. Valencia replied by saying "I will talk to Long about your UCC. It can take up
4  to 30 days, I have new arrivals." Id. Plaintiff further claims that after this exchange, he made a
5  request to Valencia that Dr. McAlpine be at his UCC review for single cell status and that he
6  asked Valencia again on August 23, 2010 when he would have his UCC review; Valencia
7  responded by stating that plaintiff would have to talk to Long about the matter. Id. at ¶¶20, 23.
8  Beyond these allegations, plaintiff presents no other evidence regarding Valencia's involvement
9  in this matter.

10  The court finds this evidence insufficient to show that Valencia acted with deliberate
11  indifference to plaintiff's medical needs. There is no evidence indicating that Valencia attempted
12  to influence in any way Dr. McAlpine's decision to rescind plaintiff's single cell status. See
13  Decl. of Valencia at ¶10. In fact, the record does not indicate that Valencia ever spoke to Dr.
14  McAlpine or any of the other medical staff regarding plaintiff's chrono. Furthermore, the record
15  shows that Valencia had no authority to unilaterally provide plaintiff single cell status on the
16  occasions he spoke with plaintiff on August 20, 2010 and August 23, 2010, prior to Dr.
17  McAlpine's decision. Id. at ¶6. Additionally, Valencia had no power to provide plaintiff with
18  single cell status after Dr. McAlpine rescinded plaintiff's chrono. Id. at ¶9. Accordingly, the
19  evidence fails to support a conclusion that Valencia intentionally interfered with plaintiff's
20  alleged medical need for a single-person cell or that his actions affected in any way plaintiff's
21  housing status. For this reason, defendants should be granted summary judgment with regard to
22  plaintiff's claim against Valencia.

23      C.  Molles

24  Plaintiff claims that Molles acted with deliberate indifference to his medical needs when
25  she sent an email to Dr. McAlpine requesting a review of the single-cell chrono issued by Dr.
26  Win on August 3, 2010. First Amended Complaint at ¶¶24-25. The undisputed facts show that
27  Molles sent an email to Dr. Traqiuna, Dr. McAlpine, Laurie Austin, and Associate Warden
28  Anthony Jones on August 24, 2010 noting that plaintiff's August 3, 2010 chrono appeared

11

incongruent with the fact that plaintiff was not in the prison's Disability Placement Program. ECF No. 81-1 at Exhibit J. In this email, Molles requested that the medical staff review plaintiff's chrono. Dr. McAlpine responded to Molles' request on the same day, stating that he would look into the matter. Between August 24, 2010 and October 1, 2010, Molles sent a number of email messages to Dr. McAlpine requesting updates regarding plaintiff's single cell status. See id. On October 1, 2010, Dr. McAlpine responded to Molles, informing her that he had signed a new chrono for plaintiff rescinding plaintiff's single cell status. Id.; Decl. of Molles at ¶6.

Plaintiff argues that this email exchange shows that Molles "failed to carry out and interfered with [plaintiff's] Licensed Medical Doctor's prescribed treatment of single cell status," amounting to deliberate indifference under the Eighth Amendment. First Amended Complaint at ¶25. The evidence does not support this assertion. The undisputed facts demonstrate that Molles merely requested the prison's medical staff to review plaintiff's chrono, and then sent several follow up emails regarding plaintiff's single cell status. See ECF No. 81-1 at Exhibit J. The evidence further indicates that Molles had no other contact with Dr. McAlpine or other medical staff prior to the rescission of plaintiff's single cell status, and that Dr. McAlpine based his determination to rescind plaintiff's chrono on his own medical judgment. The fact that Molles' email initiated Dr. McAlpine's review of plaintiff's single cell status does not support an inference that Molles tried to intentionally interfere with plaintiff's treatment or coerce Dr. McAlpine into rescinding plaintiff's single cell status. See Estelle, 429 U.S. at 104. Plaintiff fails to show that there is a genuine dispute of material fact regarding Molles' intentional interference interfered with plaintiff's medical care. Therefore, summary judgment should be entered in defendants' favor with respect to plaintiff's claim against Molles.

D. Cappel

Plaintiff alleges that Cappel also contacted Dr. Traquina and coerced him to rescind plaintiff's single cell status. First Amended Complaint at ¶62. Beyond this conclusory allegation in his complaint, plaintiff proffers no evidence that Cappel had contacted Dr. Traquina and coerced him into having plaintiff's single cell status rescinded. There is no basis for an inference that Cappel coerced or even contacted Dr. Traquina in the manner plaintiff claims. See Liberty

1   Leasing Co., 380 F.2d at 1015.  Moreover, plaintiff stated during his deposition that Cappel was
2   not the one who allegedly ordered the medical staff to rescind the single cell chrono.  Id. at 50:23-
3   51:3.  Plaintiff also admitted that he did not know whether Cappel had even contacted Dr.
4   Traquina.  Id. at 51:9-19.  Finally, even if plaintiff proffered evidence that Cappel had contacted
5   Dr. Traquina in the manner alleged, he would be unable to show that Cappel's actions had a
6   causal connection with Dr. McAlpline's decision to rescind plaintiff's single cell status.

7         Furthermore, to the extent that plaintiff makes his claim against Associate Warden Cappel
8   on the basis of his administrative responsibility over operations at the prison and the enforcement
9   of regulations, see First Amended Complaint at ¶32, plaintiff's liability theory fails as a matter of
10  law.  A supervisor cannot be held liable for constitutional deprivations carried out by his
11  subordinates unless he personally directs or takes part in the deprivation.  Ybarra v. Reno
12  Thunderbird Mobile Home Village, 723 F.2d 675, 680 (9th Cir. 1984); see also Taylor v. List,
13  880 F.2d 1040, 1045 (9th Cir. 1989) (citing Ybarra, 723 F.2d at 680-81) ("There is no respondeat
14  superior liability under section 1983.").  Therefore, the fact that Cappel had administrative
15  responsibility over "Facility Yard 2" where plaintiff was housed is insufficient to raise a triable
16  issue.

17        Plaintiff also states in his verified complaint that on September 12, 2010, he sent a request
18  to Cappel asking that he "honor [plaintiff's] medically prescribed single cell status."  First
19  Amended Complaint at ¶32.  The fact that plaintiff notified Cappel of his single cell status does
20  not, standing alone, give rise to liability; mere notification of a housing determination is
21  insufficient to create liability for an official in Cappel's position.  See Lucas v. Swarthout, No.
22  CIV S-10-3252-GEB, 2011 WL 5554537, at *4 (E.D. Cal. Nov. 15, 2011) ("[P]laintiff's
23  indication that he notified the warden and associate warden of the housing determination is not
24  sufficient.  Only if the housing decision was made by either the warden or associate warden, or
25  made at their direction, could these supervisory defendants be liable.").  The evidence in the
26  record shows that Cappel had no direct role in determining plaintiff's housing status and that any
27  such determination would be referred by Cappel to medical staff.  Furthermore, there is nothing in
28  the evidentiary record that indicates that Cappel attempted to otherwise interfere with the issuance

or rescission of plaintiff's single cell status.  Accordingly, the court finds that summary judgment should be issued in defendants' favor regarding the claim against Cappel.

### E.  Stauss and Swartout

Plaintiff states that he sent a written request to Swarthout on September 12, 2010 requesting that Swarthout honor plaintiff's single cell status.  First Amended Complaint at ¶32.  Plaintiff further states that he hand delivered a similar request to Stauss on September 24, 2010.  Id. at ¶34.  Additionally, plaintiff states that he personally spoke with Swarthout on October 1, 2010 regarding his request, and Swarthout replied that he would have another officer verify plaintiff's chronos with medical staff.  Id. at ¶38.  However, as with plaintiff's claim against Cappel, the mere fact that plaintiff informed these two defendants does not show that either defendant acted with deliberate indifference.  See Lucas, 2011 WL 5554537 at *4.  Plaintiff also claims that both Swarthout and Stauss, like Cappel, had administrative responsibility over the "Facility 2 Yard" where plaintiff was located.  First Amended Complaint at ¶¶32, 38.  Because there is no respondeat superior liability under section 1983, Swarthout and Stauss cannot be held liable for any constitutional deprivations allegedly perpetrated by their subordinates that they did not take part in or direct.  See Ybarra, 723 F.2d at 680.  The evidence shows that neither Swarthout nor Stauss directed or took direct part in the medical staff's decision to rescind plaintiff's single cell status.  For these reasons, the evidence in the record is insufficient to show that either Strauss or Swarthout acted with deliberate indifference to plaintiff's medical needs.  Summary judgment should be issued in defendants' favor with respect to plaintiff's claims against Stauss and Swarthout.

### F.  Conclusion

The court finds that plaintiff fails to proffer evidence sufficient to show that any of the defendants acted with deliberate indifference with respect to plaintiff's serious medical needs in connection with the granting and rescission of plaintiff's single cell status.  Accordingly, it is unnecessary to address defendants' additional arguments that they are entitled to qualified immunity and immunity from damages in their official capacities under the Eleventh Amendment.  Defendants' motion for summary judgment should be granted in full.

1  III. PLAINTIFF'S MOTIONS

2  Also before the court are plaintiff's four motions: (1) Motion for Temporary Restraining Order filed on April 12, 2013 (ECF No. 67); (2) Motion for Temporary Restraining Order and Preliminary Injunction filed on September 12, 2013 (ECF No. 89); (3) Motion for Sanctions and Protective Order filed on September 26, 2013 (ECF No. 93); and (4) Motion to Supplement Newly Discovered Evidence filed October 18, 2013 (ECF No. 97). The court first addresses plaintiff's two motions for preliminary injunctive relief.

A.  Plaintiff's Motions for Preliminary Injunctive Relief

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, Nos. 07-36039, 07-36040, 2009 WL 1941550 at *13 (9th Cir. July 8, 2009) (quoting Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

With regard to plaintiff's motion filed April 12, 2013, it appears that the harm plaintiff complained of had already been abated by the time he had submitted his motion. In his declaration in support of the motion, plaintiff states that since his arrival in his new single person cell on February 1, 2013, his conditions have improved and the sanitary condition of the cell were an improvement over the conditions he claims he was subjected to when living with other inmates. See ECF No. 67 at 37. Additionally, plaintiff's later motions indicate that his living situation has changed in the time since April 12, 2013,[4] thus making this motion moot. Accordingly, this motion should be denied.

---

[4] See ECF Nos. 89, 96.

15

1         In his September 12, 2013 Motion for a Temporary Restraining Order and Preliminary
2 Injunction, plaintiff moves the court to require defendants to (1) immediately move plaintiff back
3 to Cell 108 in Building 8 at CSP-Solano, which is designated as a "heat risk" cell with e-power
4 access to plaintiff's respiratory breathing machine, (2) expedite plaintiff's medical transfer to the
5 California Health Care Facility in Stockton (CHCF-Stockton), and (3) immediately stop all forms
6 of retaliation against plaintiff, including any retaliatory cell moves, transfers, cell searches,
7 obstruction of plaintiff's access to the prison's law library, and exposing plaintiff to cellmates
8 with that create unsanitary conditions for plaintiff.  ECF No. 89 at 10-11.  Plaintiff indicates in his
9 October 18, 2013 reply in support of the motion (ECF No. 96) that he has already been granted
10 part of the relief he seeks from prison staff.  See ECF No. 96 at 5.  According to plaintiff, prison
11 staff have recently moved him to Cell 108 in Building 8 at CSP-Solano, thus making plaintiff's
12 first request for relief moot.  See id.  Plaintiff continues to request injunctive relief on the other
13 two grounds.  For the reasons set out below, the court finds that plaintiff's motion should be
14 denied because plaintiff fails to meet the requirements for preliminary injunctive relief.

15         First, for the reasons explained above and in light of the recommendation that defendants'
16 motion for summary judgment should be granted in full, it is clear that plaintiff cannot succeed on
17 the merits of his underlying claims.  Furthermore, plaintiff fails to show that he will suffer
18 irreparable harm if he is not moved to CHCF-Stockton.  Plaintiff has been moved back to Cell
19 108 in Building 8 at SCP-Solano, a cell designed to house inmates using "heat risk" medication,
20 such as plaintiff, and which is near an e-power outlet that would support plaintiff's breathing
21 machine in case of an emergency power outage.  See ECF No. 89 at 10.  The crux of plaintiff's
22 argument for injunctive relief is that he was housed in a non-heat risk building without access to
23 e-power for his respiratory machine.  See id. at 1-2.  Based on plaintiff's own allegations in
24 support of his motion, plaintiff's new housing in Cell 108 alleviates these problems.  Therefore,
25 plaintiff fails to show how he will suffer irreparable harm if he is not moved to CHCF-Stockton.

26         Finally, the balance of equities and public interest weigh against injunctive relief.
27 Plaintiff will not suffer cognizable harm if the injunction is not issued, while defendants and
28 CDCR as a whole would be harmed by the level of intrusion into the CDCR's operations by the

1  federal courts that the requested injunction would involve.  See Toussaint v. McCarthy, 801 F.2d
2  1080, 1086-87 (9th Cir. 1986).  Furthermore, a prisoner has no right to be housed in a particular
3  prison or even in a particular state.  Olim v. Wakinekona, 461 U.S. 238, 248 (1983); Meachum v.
4  Fano, 427 U.S. 215, 224-25 (1976).  Accordingly, granting an injunction to send plaintiff to a
5  different facility that he has personally chosen would not "be the least intrusive means necessary
6  to correct the harm."  18 U.S.C. § 3626(a)(2).  Because plaintiff fails to make a showing that the
7  factors for preliminary injunctive relief are in his favor, the court finds that this motion should be
8  denied.

   B.  Plaintiff's Other Motions

10  In his motion filed on September 26, 2013, plaintiff requests "an order against defendants
11  and their agents for retaliation and intentional interference with prescribed seizure treatment,
12  access to e-power cell for respiratory breathing machine, and exposing plaintiff to new
13  roommates' grey dusty blankets in violation of medically prescribed respiratory treatment."  ECF
14  No. 93 at 1.  Plaintiff's declaration in support of this motion contains no facts showing how the
15  defendants named in the case are connected to the conduct that of which plaintiff complains.
16  Plaintiff alleges that the actions that give rise to his request for sanctions and a protective order
17  were committed at CSP-Solano by Officers Borchain, Fox, Raferty, and Grier, Sergeants
18  Haseltine and Muhammad, Facility Captain Mitchell, and Associate Warden Matteson, none of
19  whom are named as defendants in the complaint.  The court is unable to issue an order against
20  individuals who are not parties to a suit pending before it.  Zenith Radio Corp. v. Hazeltine
21  Research, Inc., 395 U.S. 100 (1969).  There is no indication in plaintiff's alleged facts regarding
22  this motion that any of the defendants named in the First Amended Complaint played any role in
23  or had any control over any of the events that plaintiff complains about in his motion.  Because
24  the court cannot issue an order against non-parties, this motion should be denied.
25  Finally, plaintiff requests in his recently-filed "Motion to Supplement Newly Discovered
26  Evidence" that the court consider the newly-submitted declaration of Mark Vaughn, an inmate at
27  CSP-Solano, in considering defendants' motion for summary judgment.  ECF No. 97.  In this
28  declaration, Vaughn states that he uses a breathing apparatus like the one plaintiff uses and that he

was prescribed single cell status by Dr. Win on July 23, 2013 because of his need for the breathing machine. Decl. of Vaughn (ECF No. 97 at Exhibit A) at ¶¶6, 8. Plaintiff asserts in his motion that this new declaration "directly conflicts with defendants' supporting declarations by Dr. McAlpine and Dr. Traquina that [plaintiff's] single cell status based on breathing machine was not medically indicated." ECF No. 97 at 1-2. Plaintiff also claims that this new evidence supports plaintiff's "position that Dr. McAlpine, Dr. Traquina, Dr. Win, Dr. Sagge, and Dr. Muhammad did properly prescribe medical single cell status after numerous examinations of [plaintiff] and his medical records." Id. at 2.

Even if the court were to consider this new evidence, it does not change the determination that defendants' motion for summary judgment should be granted in full. The Vaughn declaration is not relevant to the dispositive question presented by the motion: whether there is a genuine issue of material fact regarding the defendants' deliberate indifference to plaintiff's serious medical needs. Accordingly, this motion should be denied.

IT IS HEREBY RECOMMENDED that

1. Defendants' June 28, 2013 Motion for Summary Judgment (ECF No. 81) be granted in full;
2. Plaintiff's April 12, 2013 Motion for a Temporary Restraining Order (ECF No. 67) be denied;
3. Plaintiff's September 12, 2013 Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 89) be denied;
4. Plaintiff's September 26, 2013 Motion for Sanctions and Protective Order (ECF No. 93) be denied; and
5. Plaintiff's October 18, 2013 Motion to Supplement Newly Discovered Evidence (ECF No. 97) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 29, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE